Glen Paul WELLS, Petitioner,

v.

Jack WISE, Warden, Federal Correctional Institution, Terminal Island, California, and Norman Carlson, Director, Federal Bureau of Prisons, United States Board of Parole, Respondents.

No. CV 74–2052–DWW.

United States District Court,
C. D. California.

Feb. 5, 1975.

Fred Okrand, John D. O'Loughlin, Jill Jakes, Dan C. Lavery, Mark D. Rosenbaum, ACLU Foundation of Southern California, Los Angeles, Cal., for petitioner.

William D. Keller, U.S. Atty., Eric A. Nobles, Asst. U.S. Atty., Chief, Crim. Div., Daniel W. Henry, Asst. U.S. Atty., Los Angeles, Cal., for respondents.

ORDER GRANTING WRIT OF HABEAS CORPUS

DAVID W. WILLIAMS, District Judge.

This is a habeas corpus proceeding seeking injunctive relief as well as petitioner's release from custody. The facts are not in dispute. While on pa-

role from federal prison, petitioner pled guilty to a violation of California Vehicle Code § 10851 (driving a motor vehicle without the consent of the owner) pursuant to a plea bargaining arrangement which contemplated the possibility that Wells might be violated on his federal parole as a result of the new offense. While awaiting trial on the intervening charge, Wells was visited in jail by his federal probation officer who indicated to petitioner's attorney that there was a high probability of a federal parole violation warrant being issued for the petitioner. The state court judge sentenced Wells to state prison for the term prescribed by law but agreed that the sentence could be served concurrently with any additional time that petitioner might receive as a result of federal parole violation.

Wells was committed to the California Department of Corrections on November 18, 1971 on the new charge and on January 6, 1972 a federal parole violator warrant was issued against him. In the next few months petitioner and his mother made repeated efforts to cause the parole warrant to be executed so that the Board of Parole would review petitioner's case but the only action that was taken was a decision by the Board that petitioner's detainer would remain in effect. Wells remained in state custody until March 19, 1974 when he was transferred to the Federal Correctional Institute at Terminal Island, California. On June 21, 1974 he was given a parole revocation hearing at which time the Board determined that a violation had taken place.

The issue involved is whether the Parole Board's failure to hold a revocation hearing while petitioner was serving his intervening state sentence constitutes a violation of petitioner's Fifth Amendment right to due process. The revocation hearing was not held until some 32 months after the alleged parole violation took place.

Wells contends that his Fifth Amendment due process rights have been abridged in that he was deprived of a timely revocation hearing as dictated by Morrissey v. Brewer, 408 U.S. 471, 478, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). While he concedes that Morrissey has no retroactive effect, his parole was not revoked until after the Morrissey decision [1] and therefore he maintains that upon the filing of that decision, parole authorities were put on notice that if they intended to revoke his parole they must hold the requisite hearing without any undue delay. I agree with this contention.

As a result of the Parole Board's failure to provide Wells with a timely hearing, he has been prejudiced by the very factors warned against by Morrissey, i.e., the loss of witnesses or documentary evidence preventing unnecessary limitations on personal liberty. In Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.C.D. C.1973) the Court in speaking to the prejudice that might accompany the delay in holding a revocation hearing, pointed out that "the parolee could be arbitrarily deprived of the opportunity to have his reincarceration, if ordered, run concurrently with the remainder of his intervening sentence." (page 272).

The Government argues that even if Morrissey is applicable, the reasonable time period does not begin to run until such time as the federal authorities actually take custody of the alleged violator. Thus, respondents reason that since petitioner was transferred to federal custody on March 19, 1974 and his hearing was held on June 21, 1974, Morrissey was satisfied.

Better reasoning suggests that the reasonable time period mandated by Morrissey begins to run with the "issuance of a violator warrant (which) triggers a process which, as a matter of fundamental fairness, must be pursued with reasonable diligence and with reasonable dispatch." See Shelton v.

I. Decided June 29, 1972.

U.S. Board of Parole, 128 U.S.App.D.C. 311, 388 F.2d 567, 574 (1967); Jones v. Johnston, 368 F.Supp. 571 (D.C.D.C. 1974). The warrants are issued by the Parole Board to alert state authorities of pending proceedings involving the alleged violator and are authorized by 18 U.S.C. § 4207.

Respondent argues that the formal procedures set out in *Morrissey* are applicable only to the situation where the issue of violation *vel non* is in controversy; where the fact of the violation has already been conclusively determined by either a conviction or admission, departure from *Morrissey* procedure should be tolerated. Noorlander v. U.S. Attorney General, 465 F.2d 1106 (8th Cir., 1972); Vladovic v. Parker, 455 F.2d 495 (9th Cir., 1972); Jefferson v. Willingham, 366 F.2d 353 (10th Cir., 1966). *Noorlander* does not discuss the possible effect of *Morrissey* upon its result and the other two cases are pre-*Morrissey*.

In Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.C. D.C.1973) the Court held that the prisoner had a right to a prompt parole revocation hearing rather than having to wait for expiration of his present sentence, and that such hearing having been delayed some five months, the warrant should be cancelled.

> "Not only might mitigating evidence be lost during the years of intervening incarceration . . . but the parolee could be arbitrarily deprived of the opportunity to have his reincarceration, if ordered, run concurrently with the remainder of his intervening sentence." (page 272).

It is desirable to determine early in the intervening sentence the question whether the sentences will run concurrently. Certainly these questions are crucial to the parolee and should be answered at the earliest possible time.

Respondent is directed to cancel its warrant for parole violation against petitioner and to restore him to parole.