Lawrence J. FURROW, Petitioner,

v.

UNITED STATES BOARD OF PAROLE[1]
et al., Respondents.

Civ. No. 76–40 SD.

United States District Court,
D. Maine, S. D.

Aug. 12, 1976.

1976), Congress abolished the Board of Parole and replaced it with a newly-created United States Parole Commission. 18 U.S.C. § 4202 (1976).

Kim Matthews, Portland, Me., for plaintiff.

John B. Wlodkowski, Asst. U. S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a petition for writ of habeas corpus brought by a federal prisoner pursuant to 28 U.S.C. § 2241 *et seq.* Petitioner alleges that he was denied a timely parole revocation hearing in violation of 18 U.S.C. §§ 4205–4207 (1970) and the Due Process Clause of the Fifth Amendment. He seeks

a writ of habeas corpus ordering his permanent release from federal custody.

The petition was filed March 26, 1976, while petitioner was in respondents' custody at the Cumberland County Jail, Portland, Maine, pursuant to a federal parole violator warrant. The petition was accompanied by a motion for leave to proceed in forma pauperis and a request for appointment of counsel. By order of the same date the Court directed that respondents make return to the petition by April 9, permitted petitioner to file a traverse to the return by April 14, and directed that a hearing on the petition be had on April 16. By the same order the Court granted petitioner's requests for leave to proceed in forma pauperis and for appointment of counsel. Subsequently, for good cause shown and without objection, the Court granted respondents an extension of time to April 12 in which to file their return. Respondents' return was filed April 12, and petitioner filed a traverse thereto on April 14. After hearing on April 16, at which petitioner was present, counsel agreed and the Court ordered that the matter be continued pending the outcome of a parole revocation hearing before the United States Board of Parole, such hearing to be had within 30 days. By the same order the Court reserved jurisdiction of the cause. A parole revocation hearing was held within 30 days, and by order dated May 11 the Board of Parole revoked petitioner's parole and ordered him continued in federal custody.[2] The Court thereupon set this matter for a further evidentiary hearing and oral argument, which was had July 22.

The cause has been submitted to the Court on written evidence and has been fully briefed and argued by counsel.

### I.

The facts are not in dispute. In 1968, while in the United States Navy, petitioner was convicted of several crimes, for which he received a sentence of ten years imprisonment commencing November 30, 1968. In execution of this sentence petitioner was confined at the Federal Reformatory at Petersburg, Virginia. He was paroled from this institution on March 5, 1973.

On June 22, 1973 petitioner was convicted of the crime of armed assault with a firearm in the Androscoggin County, Maine, Superior Court. He was sentenced to four to ten years imprisonment at the Maine State Prison, Thomaston, Maine.

On May 16, 1973, having been apprised of the state charges pending against petitioner, the United States Board of Parole issued a parole violator warrant against him. This date was within the maximum term of petitioner's federal sentence, of which 2,095 days remained to be served. Petitioner was at that time in the custody of state officers. Pursuant to Board of Parole practice and regulations, 28 CFR § 2.53,[3] the federal

---

2. The Board stated its decision as follows (*sic*):
REVOKE PAROLE. · REASONS: Violation charge # 1. *(a) Burglary (b) Armed Assault and Battery:* The panel makes no finding on this charge. Violation Charge # 2. *Unauthorized Possession of a Firearm.* BASIS: You admitted to the panel that you had committed this offense and according to the records you were arrested and charged with armed assault, convicted and sentenced on June 22, 1973 to a period of 4–10 years to be served at Maine State Prison at Thomaston, Maine.
The Board further ordered (*sic*):
CONTINUE FOR INSTITUTIONAL REVIEW HEARING IN DECEMBER, 1976 WITH AN UPDATED PSYCHIATRIC/PSYCHOLOGICAL REPORT. REASON: Your release at this time would depreciate the seriousness of your parole violation and promote disrespect for the paroling process; there does not appear to be reasonable probability at this time that you would live at liberty without violating the law because of your conviction as outline in the reasons for revocation.

3. This regulation, 28 CFR § 2.53 (1975), provides:
§ 2.53 *Warrant placed as a detainer and dispositional interview.*
(a) In those instances where the prisoner is serving a new sentence in an institution, the warrant may be placed there as a detainer. Such prisoner shall be advised that he may communicate with the Board relative to disposition of the warrant, and may request that it be withdrawn or executed so his violator term will run concurrently with the new sentence. Should further information be

warrant was not executed at that time but was placed with state authorities as a detainer.

On March 18, 1976, petitioner was paroled by the Maine parole board, and on March 22 he was delivered to the custody of federal authorities, pursuant to the federal detainer. A preliminary hearing, pursuant to 28 CFR § 2.54, was held on March 23 and probable cause was found to hold petitioner for a full parole revocation hearing, pursuant to 28 CFR § 2.56.

In accord with Board of Parole practice and regulations, petitioner was not granted a full parole revocation hearing until after he was taken into the custody of federal officials on March 22, 1976. Petitioner therefore did not receive such a hearing until three years after issuance of the warrant. While he was in the state prison, however, petitioner was twice afforded a "dispositional review" of his status, as required by Regulation 2.53—that is, on written request of the petitioner, Board of Parole personnel in July 1974 and June 1975 reviewed his file and information supplied

deemed necessary, the Regional Director may designate a hearing examiner panel to conduct a dispositional interview at the institution where the prisoner is confined. At such dispositional interview the prisoner may be represented by counsel of his own choice and may call witnesses in his own behalf, provided he bears their expenses. He shall be given timely notice of the dispositional interview and its procedure.

(b) Following the dispositional review the Regional Director may:

(1) Let the detainer stand

(2) Withdraw the detainer and close the case if the expiration date has passed;

(3) Withdraw the detainer and reinstate to supervision; thus permitting the federal sentence time to run uninterruptedly from the time of his original release on parole or mandatory release.

(4) Execute warrant, thus permitting the sentence to run from that point in time. If the warrant is executed, a previously conducted dispositional interview may be construed as a revocation hearing.

(c) In all cases, including those where a dispositional interview is not conducted, the Board shall conduct annual reviews relative to the disposition of the warrant. These decisions will be made by the Regional Director. The Board shall request periodic re-

by state prison authorities. Both reviews resulted in the decision to "let the warrant and detainer stand." On neither occasion was petitioner granted the "dispositional interview," which Regulation 2.53 makes available at the discretion of the reviewing officials.

Officials of the Maine State Prison have stated, and the respondents acknowledge, that because of the federal detainer petitioner was automatically barred from participation in various prison activities for which he might otherwise have been eligible. These activities specifically included programs involving temporary absence from the prison, such as furlough, work at the prison farm, work release and others. *See* 34 Me.Rev.Stat.Ann. § 527 (1973 Supp.).[4]

## II.

Petitioner bases his claim that he is in custody in violation of the Constitution or laws of the United States on two grounds: (1) that the relevant statutes, 18 U.S.C. §§ 4205–4207 (1970)[5] and regulation,

ports from institution officials for its consideration.

This regulation is substantially identical to the predecessor regulation, 28 CFR § 2.37 (1974), which was adopted October 31, 1967. 32 Fed. Reg. 15014. The predecessor regulation is reprinted at *Cook v. United States Attorney General, infra,* 488 F.2d at 671 n. 10. This regulation has been superseded by regulations recently promulgated under the Parole Commission and Reorganization Act of 1976. 41 Fed.Reg. 19326–40 (May 2, 1976).

4. It is not known, and probably cannot be, whether petitioner would to a certainty have been allowed to participate in these programs but for the federal detainer. Respondents, however, have not challenged petitioner's assertion that the federal detainer caused him to be denied participation in these programs. And letters from Maine prison officials which have been placed in evidence indicate that petitioner was a "model prisoner" enrolled in the prison's college program and active in the Maine State Prison Jaycees.

5. Sections 4205–4207 were repealed and replaced by the Parole Commission and Reorganization Act of 1976, 90 Stat. 219, effective May 14, 1976. The prior law, however, controls this case.

28 CFR § 2.53, required that he be afforded a federal parole revocation hearing within a reasonable time after issuance of the parole violator warrant against him on May 16, 1973; and (2) that the failure to grant him such a hearing until May 11, 1976, violated his right to due process under the Fifth Amendment.

■ 1. *Petitioner's statutory claim.* It is clearly established that neither the statutes nor the regulations governing Board of Parole procedures require that an alleged parole violator be afforded a parole revocation hearing prior to completion of an intervening prison sentence and execution of the parole violator warrant. Section 4205 provides that the unexpired term of a parole violator's sentence "shall begin to run from the date he is returned to the custody of the Attorney General under [a parole violator] warrant." Section 4206 provides that execution of a violator warrant shall be effected "by taking such prisoner and returning him to the custody of the Attorney General." Section 4207 provides that opportunity for a parole revocation hearing shall be extended to "[a] prisoner *retaken* upon a [parole violator] warrant" (emphasis supplied). The Board of Parole regulation implementing these statutory provisions, 28 CFR § 2.53, provides that where an alleged parole violator is serving an intervening sentence under a new federal or state conviction, a warrant may issue and be placed as a detainer at the institution where he is being held, but that the warrant need not be executed until the intervening sentence has expired. *See* note 3 *supra.* Thus, under the applicable statutes and regulations, petitioner's right to a parole revocation hearing did not attach until his intervening state sentence had been completed and he had been taken into federal custody pursuant to the parole violator warrant, even though that warrant had been issued several years earlier. *Accord, Reese v. United*

*States Board of Parole,* 530 F.2d 231, 233–36 (9th Cir. 1976); *Small v. Britton,* 500 F.2d 299, 301 (10th Cir. 1974); *Cook v. United States Attorney General,* 488 F.2d 667, 670–71 (5th Cir.), *cert. denied,* 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974); *Noorlander v. United States Attorney General,* 465 F.2d 1106, 1109–10 (8th Cir. 1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1973).[6]

The failure to grant petitioner a parole revocation hearing until after his release from state custody did not violate the relevant statutes and Parole Board regulations.

2. *Petitioner's constitutional claim.* Petitioner claims that the failure to afford him a hearing until after he had been taken into federal custody denied him due process of law in violation of the Fifth Amendment. He asserts that the Board's procedures deprived him of liberty without due process of law in two respects: (1) by delaying the parole revocation hearing until after completion of the intervening state sentence, the Board denied him the opportunity to serve the remainder of his federal sentence concurrently with his state sentence; and (2) by placing the detainer with state prison authorities, the Board caused him to be denied the opportunity to participate in rehabilitative and educational programs involving temporary release from the prison. Petitioner bases his contention that these deprivations could not validly be effected without an opportunity for a hearing on three recent decisions of the Supreme Court: *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In *Morrissey* the Court held that the Due Process Clause requires that a parolee taken into custody for alleged violation of the conditions of parole be afforded an informal

---

**6.** Even if there were some ambiguity in Sections 4205–4207, the Board's procedures would have to be upheld as in accord with longstanding practice and as within the Board's special expertise as the agency "charged with [the] execution" of the statutes. *Red Lion Broad-*casting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). *See Zerbst v. Kidwell,* 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); *Gaddy v. Michael,* 519 F.2d 669, 675 n.11 (4th Cir. 1975).

1314

probable cause hearing "as promptly as convenient after arrest" and a more elaborate parole revocation hearing "within a reasonable time" thereafter. 408 U.S. at 485–89, 92 S.Ct. 2593, 2602. In *Gagnon* the Court held that the procedures required by *Morrissey* extend to probationers as well as to parolees. In *Wolff* the Court held that where a state statute provides that prisoners could lose good-time credits only if guilty of serious misconduct, the Due Process Clause requires that prisoners be afforded limited procedural safeguards prior to misconduct determinations.

The Courts of Appeals are divided on the question whether these decisions require that a parolee be accorded a parole revocation hearing prior to the completion of an intervening sentence. Five Circuits—the Fourth, Fifth, Sixth, Ninth and Tenth—have held that the procedure followed in the present case does not violate due process, at least where the delay does not prejudice a prisoner's ability to present evidence on his own behalf. *Gaddy v. Michael,* 519 F.2d 669 (4th Cir. 1975); *Cook v. United States Attorney General, supra; Trimmings v. Henderson,* 498 F.2d 86 (5th Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 405 (1975); *Burdette v. Nock,* 480 F.2d 1010 (6th Cir. 1973); *Reese v. United States Board of Parole, supra; Small v. Britton, supra.* Two Circuits—the Seventh and Eighth—are of the opposite view, that the practice is unconstitutional. *United States ex rel. Hahn v. Revis,* 520 F.2d 632 (7th Cir. 1975); *Cleveland v. Ciccone,* 517 F.2d 1082 (8th Cir. 1975); *Cooper v. Lockhart,* 489 F.2d 308, 317 (8th Cir. 1973). *See also Reese v. United States Board of Parole, supra,* at 237–38 (Duniway, Jr., dissenting). This Court concurs with the majority view.

7. Concededly, if the warrant issued against petitioner had been executed in 1973 and petitioner had been afforded a "parole revocation hearing" within the meaning of 28 U.S.C. § 4207 (*see* 28 CFR §§ 2.54–2.56), Section 4205 would have required that the remainder of his federal sentence start to run from the date the warrant was executed. Such a procedure would thus have foreclosed the Board's discretion to impose a consecutive sentence. But the Board need not have followed this procedure; it could

The analysis of petitioner's due process claim must follow a familiar two-step pattern: first, the Court must determine whether petitioner has indeed suffered deprivation of an interest in liberty within the meaning of the Due Process Clause; second, if he has been deprived of a liberty interest, the Court must determine whether the procedures afforded adequately protected that interest. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Morrissey v. Brewer, supra; Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ Insofar as petitioner alleges a deprivation of liberty based on loss of an opportunity to serve his federal and state sentences concurrently, petitioner has not been deprived of a liberty interest protected by the Fifth Amendment. First, the decision whether a prisoner will serve these sentences concurrently or consecutively is within the discretion of the Board of Parole. *Zerbst v. Kidwell,* 304 U.S. 359, 362–63, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); 18 U.S.C. § 4207. At the time the parole violator warrant against petitioner was issued in May 1973, the Board could have afforded him a constitutionally adequate hearing in the form of a "dispositional interview" pursuant to 28 CFR § 2.53 and could have at that time concluded either that the unexpired portion of his federal sentence would start to run immediately or that it would start to run only after petitioner had completed his intervening state sentence. Affording the petitioner a hearing in 1973 would therefore not have limited the Board's discretion as to whether he would serve his federal and state sentences concurrently or consecutively.[7] Second, post-

have declined to execute the warrant and instead have provided petitioner an elaborate hearing featuring a full panoply of procedural safeguards pursuant to the "dispositional interview" procedure provided in 28 CFR § 2.53. This alternative would not have triggered the commencement of the unexpired federal sentence, while at the same time affording petitioner an opportunity to be heard undeniably in accordance with the requirements of due process.

ponement of the parole revocation hearing until after the completion of petitioner's state sentence did not, in this case, destroy the possibility that petitioner would in effect serve concurrent sentences. Petitioner was originally sentenced to a maximum of ten years imprisonment in 1968. Taking into account only the four-month period between his release on federal parole in January 1973 and the issuance of a parole violator warrant against him in May 1973, he still has more than two years and six months remaining on his original sentence. Even if he had been allowed to serve concurrent sentences, he would have time remaining. If the Board should now determine that he should receive credit for his state sentence, it could release petitioner well before or at the time a concurrent federal sentence would have expired. 18

U.S.C. § 4207. Finally, petitioner does not allege that the delay resulted in any diminution of his ability to produce evidence of mitigating circumstances which might justify continuation of his parole status. *See Reese v. United States Board of Parole, supra,* at 235; *Gaddy v. Michael, supra,* at 677–78; *Small v. Britton, supra,* at 302; *Cook v. United States Attorney General, supra,* at 673.[8] Indeed, it is likely, in view of his apparently exemplary prison record, that petitioner's case for mitigating circumstances has improved with the passage of time. *See Gaddy v. Michael, supra,* at 675. There is no suggestion in the present record that the delay of petitioner's hearing until after completion of his state sentence has prejudiced him in any way.[9]

■ Nor has petitioner established that loss of the opportunity to participate in

---

8. Petitioner's inability to show any prejudice stemming from the passage of time between issuance of the parole violator warrant and the parole revocation hearing distinguishes this case from at least two decisions which have held that a hearing may not await completion of an intervening sentence. *Cleveland v. Ciccone, supra,* at 1087; *Sutherland v. District of Columbia Board of Parole,* 366 F.Supp. 270, 272 (D.D.C.1973).

9. An additional basis for concluding that petitioner has not alleged a "liberty interest" within the meaning of the Due Process Clause is suggested by the plurality opinion of Justice Rehnquist in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Holding that the rights of public employees to continued employment under the Lloyd-La Follette Act, 5 U.S.C. § 7501, are limited by provisions of that Act regarding the procedural safeguards that will be made available prior to discharge, Justice Rehnquist stated, *id.* at 151–52, 155, 94 S.Ct. at 1643, 1645:

Here [the employee] did have a statutory expectancy that he not be removed other than for "such cause as will promote the efficiency of [the] service." But the very section of the statute which granted him that right . . . expressly provided also for the procedure by which "cause" was to be determined, and expressly omitted the procedural guarantees which [the employee] insists are mandated by the Constitution. . . Congress was obviously intent on according a measure of statutory job security to governmental employees which they had not previously enjoyed, but was likewise intent on excluding more elaborate procedural requirements which it felt would make the op-

eration of the new scheme unnecessarily burdensome in practice. Where the focus of legislation was thus strongly on the procedural mechanism for enforcing the substantive right which was simultaneously conferred, we decline to conclude that the substantive right may be viewed wholly apart from the procedure provided for its enforcement. . . .

\*    \*    \*    \*    \*    \*

Here the property interest which [the employee] had in his employment was itself conditioned by the procedural limitations which had accompanied the grant of that interest.

This reasoning would appear to apply a fortiori to the instant case. Release on parole itself affords

an individual, not . . . the absolute liberty to which every citizen is entitled, but only . . . the conditional liberty properly dependent on the observance of special parole restrictions.

*Morrissey v. Brewer, supra,* 408 U.S. at 480, 92 S.Ct. at 2600. The procedure of placing a detainer on a parolee serving an intervening sentence and of withholding the right to hearing pending completion of that sentence was well established at the time of petitioner's parole. This procedure followed automatically upon conviction and imprisonment for a state offense. It may therefore be viewed as one of the "procedural limitations which had accompanied the grant of" parole. *Arnett v. Kennedy, supra,* 416 U.S. at 155, 94 S.Ct. at 1645. *See also Meachum v. Fano,* —— U.S. ——, 96 S.Ct. 2532, 49 L.Ed.2d —— (1976).

certain rehabilitative programs constituted deprivation of liberty within the meaning of the Due Process Clause. The only programs from which petitioner alleges he was excluded were those involving activities outside the walls of the Maine State Prison. Participation in such programs is governed by 34 Me.Rev.Stat.Ann. § 527 (1973 Supp.), which states (emphasis supplied):

> The Bureau of Corrections is authorized to adopt and implement rehabilitative programs, including work release, within the penal and correctional institutions under its control. Under such programs the head of any such institution *may permit* any inmate or prisoner considered to be worthy of trust to participate in activities which may include training and employment, outside the institution, subject to regulations adopted by the Bureau of Corrections, which in the judgment of the head of the institution will contribute to the reformation of the inmate or prisoner and will assist in preparing him for eventual release.

The recent decision of the Supreme Court in *Meachum v. Fano,* —— U.S. ——, 96 S.Ct. 2532, 49 L.Ed.2d —— (1976), appears to be dispositive of petitioner's claim that loss of the opportunity to participate in such rehabilitative programs constitutes a deprivation of an interest protected by the Due Process Clause. In *Meachum* the Court held that inmates of one Massachusetts prison were not entitled to a hearing before being transferred to another institution in that State. In distinguishing *Wolff v. McDonnell, supra,* the Court narrowly limited the scope of that decision. The Court stated, —— U.S. at ——, 96 S.Ct. at 2538–39:

> Under *[Wolff]* the Due Process Clause entitles a state prisoner to certain procedural protections when he is deprived of good-time credits because of serious misconduct. But the liberty interest there identified did not originate in the Consti-

tution, which "itself does not guarantee good-time credit for satisfactory behavior while in prison." 418 U.S., at 557, 94 S.Ct., at 2975. The State itself, not the Constitution, had "not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior." *Ibid.* . . . The liberty interest protected in *Wolff* had its roots in state law, and the minimum procedures appropriate under the circumstances were held required by the Due Process Clause "to insure that the state-created right is not arbitrarily abrogated." *Id.,* at 557, 94 S.Ct., at 2975.

. . .

> Here, Massachusetts law conferred no right on the prisoner to remain in the prison to which he was initially assigned, defeasible only upon proof of specific acts of misconduct. . . . [T]ransfer in a wide variety of circumstances is vested in prison officials. The predicate for invoking the protection of the Fourteenth Amendment as construed and applied in *Wolff v. McDonnell* is totally nonexistent in this case.

Similarly, in the present case the Maine statute conferred no right on petitioner to participate in minimum-custody programs. Under Section 527, permission to participate was reserved to the discretion of prison authorities.[10] That being so, the instant case falls within the rule of *Meachum* and not within that of *Wolff.* Loss of the opportunity to participate in minimum-custody programs therefore does not constitute deprivation of a liberty interest within the meaning of the Due Process Clause. *See Gaddy v. Michael, supra,* at 678; *Cook v. United States Attorney General, supra,* at 673.

Petitioner has failed to meet the threshold requirement that the deprivations of which he complains be within the range of interests protected by the Fifth Amend-

---

10. In this regard, it may be noted that respondents placed in evidence an affidavit of Donald Anderson, Chief of Administrative Systems, U. S. Bureau of Prisons, stating that a detainer such as was placed on petitioner at the Maine State Prison is "not intend[ed] . . . [to]

control the form of custody exercised by the state authorities." Although undoubtedly a foreseeable consequence of the detainer, the exclusion of petitioner from minimum-custody programs was not the decision of federal officials but of the state authorities.

ment Due Process Clause. Petitioner's constitutional claim must therefore be rejected.

### III.

■ Although unnecessary to the disposition of this petition, two additional observations are in order. First, even if petitioner has established deprivation of a "liberty interest," it is doubtful that he has shown that the "dispositional reviews" afforded him under 28 CFR § 2.53 failed to meet the requirements of due process. Petitioner's state conviction for armed assault with a firearm conclusively established that he had violated the conditions of his parole; the only issue remaining was whether there were mitigating circumstances which might justify a decision not to revoke parole. *See, e. g., Cleveland v. Ciccone, supra,* at 1087; *Cook v. United States Attorney General, supra,* at 672–73. Pursuant to 28 CFR § 2.53 petitioner was afforded the opportunity, twice, to present in writing any such circumstances to Board of Parole officials. These officials further solicited information on petitioner from Maine prison authorities, and the record shows that they received information favorable to petitioner. *See* note 4 *supra.* Although petitioner complains of the lack of opportunity for an oral hearing and for cross-examination of witnesses and of the failure of the Board to state reasons for its refusal to remove the detainer, he has not shown that it is even plausible that he was prejudiced thereby. Under these circumstances it seems clear that the decision of the Board of Parole to afford only an opportunity for written challenge to the detainer represents an intelligent and reasonable accommodation of the interests of the prisoner and the governmental interest in avoiding elaborate and expensive procedures. *See Reese v. United States Board of Parole, supra,* at 235–36; *Gaddy v. Michael, supra,* at 675–77; *Cook v. United States Attorney General, supra,* at 671–74; *cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ A second observation is that, to the extent that petitioner bases his claim on the loss of eligibility to participate in rehabilitation programs at the Maine State Prison, the remedy he seeks is inappropriate. At the time he filed this petition he was no longer in the custody of state officials. His period of deprivation had come and gone. While in the State Prison he could have brought an action to have the detainer lifted or at least to have it removed as an obstacle to participation in these programs. Indeed, the majority of cases finding that the detainer procedure violates due process arose in this manner, and the relief afforded was to remove the detainer as a bar to prison privileges. *See, e. g., Cooper v. Lockhart, supra,* at 317; *Pavia v. Hogan,* 386 F.Supp. 1379, 1387 (N.D.Ga.1974). The relief petitioner seeks in the instant action is permanent freedom. Although such relief has been granted in some actions based on loss of privileges during the intervening sentence, the rationale of granting it has been unclear. The courts have apparently reasoned that a fair hearing at the present time is impossible or that permanent release is necessary to deter undue delay in future hearings involving other prisoners. *See United States ex rel. Hahn v. Revis, supra,* at 639; *Arnold v. United States Board of Parole,* 390 F.Supp. 1177, 1179–80 & n. 1 (D.D.C.1975); *Wells v. Wise,* 390 F.Supp. 229, 230 (C.D.Cal.1975). Neither of these rationales is appropriate where, as here, petitioner has made no showing of prejudice stemming from the failure of the Board to accord him more elaborate hearings during the intervening sentence and where, as here, the actions of the respondents indicate no bad faith and have in fact been approved by a majority of the Courts of Appeals. *Cf. Johnson v. Holley,* 528 F.2d 116, 119 (7th Cir. 1975); *Cleveland v. Ciccone, supra,* at 1089.

\* \* \* \* \* \*

Petitioner has been denied no federal statutory or constitutional right by respondents in any of the respects alleged by him in the instant petition.

It is therefore ORDERED that the petition is DISMISSED and the writ DENIED.